**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 15 |
| | ) | |
| PDV INSURANCE COMPANY, LTD.,[1] | ) | Case No. 18-12216 (MEW) |
| | ) | |
| Debtor in Foreign Proceeding. | ) | |
| | ) | |

**FIRST STATUS REPORT**

John Johnston and Edward Willmott of Deloitte Financial Advisory Ltd. in Bermuda, in their capacities as the Joint Provisional Liquidators ("JPLs") and authorized foreign representatives for PDV Insurance Company, Ltd. ("PDVIC" or "Debtor"), in a provisional liquidation proceeding currently pending before the Supreme Court of Bermuda (the "Bermuda Court"), Companies (Winding Up) Commercial Court, 2018: No. 159 (the "Bermuda Proceeding"), respectfully submit the First Status Report (the "Report") pursuant to the March 18, 2024 *Order Directing Filing of Periodic Status Reports* [ECF No. 29].

### I. OFAC License

1. The JPLs have obtained a valid OFAC (Office of Foreign Assets Control) license until November 30, 2024. The OFAC license authorizes the JPLs to engage in all activities and transactions necessary for the complete and orderly wind-down of the Debtor, including activities and transactions between the JPLs and all persons and entities located in the United States. Those activities and transactions are described in this Status Report.

---

[1] PDVIC, a foreign Debtor, is a Bermuda limited company with a registered address in Bermuda c/o Deloitte Financial Advisory Ltd., Corner House, 20 Parliament Street, Hamilton, HM 12, Bermuda.

1

2. The JPLs are currently in the process of drafting an additional application to OFAC to extend the OFAC license.

## II.     **Venezuela Bond Litigation**

3. PDVIC is the beneficial owner of $29,499,000 principal amount of 2018 Bonds that were issued to it in 2002 by Venezuela. The Bonds matured in August 2018; Venezuela failed to make interest payments on the Bonds. PDVIC is owed principal plus approximately $24 million in unpaid interest.

4. PDVIC is the beneficial owner of $36,300,000 principal amount of 2019 Bonds, issued in 2009 by Venezuela. The Bonds matured in October 2019; Venezuela failed to make interest payments on the Bonds. PDVIC is owed principal plus approximately $18 million in unpaid interest.

5. Venezuela waived sovereign immunity with respect to any actions on the Bonds and consented to jurisdiction and venue in the Southern District of New York.

6. On October 31, 2023, the JPLs commenced litigation in the United States District Court for the Southern District of New York to recover on the defaulted 2018 and 2019 Bonds, styled *Johnston & Willmott v. Bolivarian Republic of Venezuela, Case No. 23-cv-09561 (Judge Rakoff)*. As alleged in the Complaint, PDVIC is owed $108,200,558, plus prejudgment interest, contractually mandated interest and any other interest or payments that may accrue and remain unpaid prior to final judgment, post judgment interest, and attorneys' fees and costs.

7. On April 15, 2024, the Summons and Complaint were served on the Venezuelan Embassy by the United States State Department. The Certificate of Mailing of same was received by the District Court Clerk on May 8, 2024, and docketed on May 9, 2024.

2

8. On June 18, 2024, the JPLs sought entry of a certificate of default. On June 20, 2024, the District Court Clerk entered the Certificate of Default.

9. The JPLs are in the process of preparing and finalizing the motion for a default judgment against Venezuela.

10. Alongside the litigation, the JPLs continue to market the Bonds for sale. In doing so, the JPLs have engaged, and continue to engage, with a United States-based entity that specializes in the marketing and sale of distressed assets.

11. Both strategies, litigation and sale, are linked. Should default judgement be granted, it is likely that the value attributable to the Bonds will increase and it will allow the JPLs greater options in maximizing the value from any realization.

### III. CITGO Heavy Rain Event

12. The Debtor is a wholly owned subsidiary of PDVSA, and an affiliate of CITGO. The Debtor is the captive insurer for CITGO and other affiliates of PDVSA. CITGO was insured by the Debtor in relation to claims arising from a heavy rain and flooding event, at CITGO's facility in Lake Charles, Texas in June 2006 (the "Heavy Rain Event"). The Debtor was reinsured in respect of those claims by third party liability reinsurers, including Swiss Reinsurance Company ("SwissRe") and Oil Casualty Insurance Ltd. ("OCIL"), in a tower of reinsurance coverage.

13. CITGO has asserted in the Bermuda Proceeding that, over a period of 12 years from 2006 to 2018, with the agreement of the Debtor, CITGO dealt directly with the third-party liability reinsurers. This arrangement was purportedly formalized via board resolution on September 25, 2017, whereby the Debtor entered into a Power of Attorney ("POA") with CITGO. As a result of this arrangement, CITGO has asserted that it is directly entitled to certain reinsurance receivables in respect of the Heavy Rain Event. The JPLs have continually refuted this assertion, on the basis

that PDVIC entered into valid contracts of reinsurance with Swiss Re, OCIL, and others, and paid premiums to such reinsurers, and as such the reinsurers were, and remain, under a contractual obligation to PDVIC to pay claims made under the reinsurance contracts, unaffected by any course of dealing between CITGO and the other reinsurers. Further, the reinsurance policies contained entire agreement clauses preventing the formation of any collateral contracts.

14. By letter dated July 3, 2018, the JPLs advised CITGO of the Bermuda Proceeding, and further advised CITGO that any claims related to the Heavy Rain Event are now the responsibility of the JPLs to pursue and the rights Debtor previously granted to CITGO under the POA are null and void as of the date of the JPLs' appointment, unless otherwise expressly agreed by the JPLs.

15. Shortly thereafter, the JPLs met with CITGO and its representatives. During the course of the meeting, CITGO confirmed that its annual premiums due to the Debtor were in arrears.

16. After the July 2018 meeting with CITGO, the JPLs asked that CITGO provide them with all reinsurance contracts pertinent to the Heavy Rain Event and any other reinsurance or insurance contracts held by CITGO, which named the Debtor as a party or primary insurer.

17. In response, CITGO insisted on the JPLs executing a non-disclosure agreement ("NDA").

18. Given the JPLs' duty to act in the best interests of the Debtor and their duties as officers of the Bermuda Court, and that the requested documents are, in all likelihood, documents to which the Debtor was a party and ultimately may belong to the Debtor, the JPLs declined to sign an NDA.

19. On June 14, 2019, the JPLs filed their *Application for Order Authorizing Issuance of Subpoena Directing Production of Documents by CITGO Petroleum Company Pursuant to 11 U.S.C. § 1521(A)(4) and Federal Rule of Bankruptcy Procedure 2004* ("CITGO 2004 Motion") [Docket No. 13]. By order dated and entered June 27, 2019, the Court granted the CITGO 2004 Motion ("CITGO 2004 Order") [Docket No. 21].

4

20. On June 27, 2019, S&L served CITGO's counsel the Subpoena Directing the Production of Documents. On July 26, 2019, CITGO served its responses and objections to the Subpoena; the JPLs and CITGO subsequently met and conferred to resolve CITGO's objections, whereby the JPLs reduced their document requests to three distinct categories.

21. In an attempt to resolve the various issues, the JPLs and CITGO entered into an Assignment Agreement on December 8, 2022. The Assignment Agreement provides that PDVIC will, without admission in respect of CITGO's Claim, permit CITGO to pursue recovery of and receive the proceeds of any claim for indemnification or reimbursement for losses, liabilities, costs and expenses arising out of the Heavy Rain Event pursuant to certain terms and conditions, notably that:

- PDVIC agrees, and CITGO accepts, the assignment to CITGO of all the Debtor's right, title, and interest to pursue, compromise and/or settle the Heavy Rain Event Insurance Claims and to receive payment from Swiss Re and/or OCIL of any reinsurance receivables in respect of the same, once the various conditions and terms are satisfied.

- CITGO agrees that it shall relinquish any rights that it may have to make claims, and/or file proofs of debt, and/or receive dividends in the liquidation of PDVIC in relation to the Heavy Rain Event Insurance Claims, once the various conditions and terms are satisfied.

- PDVSA and the PDVSA creditors waive any and all rights each may have to receive a share of any proceeds of the Heavy Rain Event Insurance Claims in the liquidation of PDVIC, once the various conditions and terms are satisfied.

- CITGO agrees that it will pay the JPLs sums due to the unconnected Scheme creditors (described below) in the sum of $262,268.38.

- CITGO agrees to pay certain liquidation costs and expenses that are or have been approved by the Bermuda Court. These costs relate to those incurred and unpaid at the Assignment Agreement effective date as well as costs relating to effectuating the Assignment Agreement as approved and agreed by the Bermuda Court.

22. On March 24, 2023, the Bermuda Court approved and sanctioned the Assignment Agreement subject to the JPLs taking all actions, including executing and delivering additional instruments, to consummate or give effect to the transactions contemplated in the Assignment Agreement, including steps necessary to promote a Scheme of Arrangement ("Scheme").

23. As such the JPLs proposed a Scheme to the Bermuda Court and PDVIC's creditors. Under the Scheme, the Scheme creditors were to give up any right they may have to receive a share of any Heavy Rain Event insurance receivables. As CITGO undertakes not to make a claim in the liquidation in relation to the Heavy Rain Event, there is a corresponding reduction in the pool of potential creditor claims in the liquidation. In addition, as set out in the Assignment Agreement, CITGO will pay various liquidation costs, therefore meaning such costs are not borne by the wider Scheme creditor group.

24. The Scheme ensured that all known and interested creditors were able to vote in support or otherwise on the Scheme, which carries into effect the Assignment Agreement.

25. A Scheme Convening Hearing was held with the Bermuda Court on May 17, 2024. At this hearing the Bermuda Court approved the presentation of the Scheme to creditors for them to vote on.

26. On June 27, 2024, the creditor Scheme Meetings were held, at which time the creditors voted in favor by the requisite number and value of the proposed Scheme of Arrangement.

SL1 2202931v2 112150.00001

27. At the Scheme Sanction Hearring held August 9, 2024, the Bermuda Court approved the Scheme of Arrangement.

28. The JPLs continue to liaise with CITGO to ensure the assignment of the Heavy Rain Event insurance receivables and to ensure the conditions and terms of the Assignment Agreement and Scheme are met.

29. It should be noted that the Assignment Agreement and Scheme were carried out within the parameters set out in either the JPLs or CITGO's respective OFAC license(s).

### IV.   Recovery of Re-Insurance Receivables

30. The JPLs have engaged a specialist re-insurance consultant in the United Kingdom to help recover reinsurance receivables from the London/Lloyds insurance market and continue to correspond with re-insurers concerning the recovery of re-insurance receivables.

31. Some of the parties in possession of said records – comprised of intermediatory insurers and loss adjustors - are based in Florida and Texas. Should these parties fail to provide the requested records, the JPLs may seek Rule 2004 authority from this Court to issue subpoenas for the production of documents.

### V.   Recovery of Cash Balances and Mutual Funds Held with U.S. Financial Institutions

32. The JPLs are seeking to recover funds (cash balances and mutual funds) held with financial institutions located and operating in the United States.

33. After continued discussions and efforts, on July 19, 2024, the JPLs recovered the sum of $77,011.58 from Franklin Templeton.

34. The JPLs' efforts to collect further assets are ongoing, and there is a strong likelihood that further relief will be needed from this Court for the JPLs to continue their collection efforts. As

such, the JPLs respectfully request that this Chapter 15 case remain active to allow the JPLs to continue, and complete, their efforts to maximize a return to the Debtor's creditors both in Bermuda and in the United States.

Dated: September 16, 2024

          STEVENS & LEE, P.C.

          By: */s/ Constantine D. Pourakis*
              Nicholas F. Kajon
              Constantine D. Pourakis
              485 Madison Avenue, 20th Floor
              New York, New York 10022
              Telephone: 212-319-8500
              Facsimile: 212-319-8505
              nicholas.kajon@stevenslee.com
              constantine.pourakis@stevenslee.com

          *Counsel for John Johnston and Edward Willmott, as Joint Provisional Liquidators and Authorized Foreign Representatives*